UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SHAWN D. MAHLER,                            )
                                            )
        Plaintiff,                          )
                                            )
    vs.                                     )   Case No. 4:20CV894 HEA
                                            )
SCHREITER READY-MIX AND                     )
MATERIALS, INC.,                            )
                                            )
        Defendant.                          )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary

Judgment, [Doc. No. ]. Plaintiff opposes the Motion.  For the reasons set forth

below, the Motion will be granted.

**Facts and Background**

Plaintiff filed this action in the Circuit Court of St. Charles County, Missouri

on March 20, 2020, alleging violations of Title VII of the Civil Rights Act of 1964.

Defendant timely removed the matter based on the Court's federal question

jurisdiction. 28 U.S.C.§ 1331.  Plaintiff's Petition alleges the following:

Plaintiff was an employee of Defendant prior to the termination of his

employment on October 24, 2018.  Plaintiff claims that once his co-workers and

supervisors became aware of the fact that the mother of Plaintiff's children is

African American and that Plaintiff has an African American girlfriend, Plaintiff endured offensive jokes and other offensive behavior from co-workers and supervisors, which created a hostile environment.  The Petition alleges Plaintiff complained about the hostile work environment.

In early October 2018, Plaintiff was involved in an accident.  On October 24, 2018, Plaintiff's employment was terminated, purportedly because of the accident. Plaintiff claims the reason given for the termination was pretextual and that he would not have been terminated but for his association with his children and girlfriend.

Count I of the Petition was brought as a race discrimination claim based on the adverse employment action of termination of employment.  Count II claimed Plaintiff was fired because of his opposition to discrimination by complaining about the hostile work environment he was enduring.  Count III alleged a hostile work environment.  Plaintiff asserts that he was subjected to unwelcome harassment during his employment and that this unwelcome harassment adversely affected his employment because the hostile environment made it difficult for Plaintiff to perform his job duties and caused him great emotional distress. Plaintiff claims Defendant knew or should have known of the harassment he was enduring but failed to take prompt and appropriate corrective action to end the harassment.  Count IV is based on retaliatory hostile work environment. Plaintiff

claims he had to endure a hostile work environment based on his opposition to discrimination.

On March 19, 2021, Plaintiff voluntarily dismissed Counts I and II of his Petition.  Plaintiff specifically noted that Counts III and IV, "both of which are hostile work environment claims," remained pending.

The parties' Statements of Uncontroverted Facts are:

Defendant Schreiter Ready-Mix & Materials, Inc ("Schreiter") is a concrete company that offers concrete mixes for a variety of construction applications, including driveways, pools and floors and provides redi-rock blocks and b-blocks to commercial and governmental customers such as MoDOT.

Shawn Mahler ("Mahler") is a Caucasian male. Mahler was employed by Schreiter as a driver from April 17, 2018 until October 24, 2018, however, his last day of work at Schreiter was September 16, 2018. On October 16, 2018, Mahler worked 7.82 hours for Schreiter. Mahler did not perform work on behalf of Schreiter or appear on-site at Schreiter between the date of his accident on October 16th and his termination. On October 26, 2018, Schreiter cut its last check to Mahler in the amount of $130.59. The October 26, 2018 paycheck covered the period ending October 20, 2018. The payment of $130.59 to Mahler represented the wages he was due for 7.82 hours of work on October 16, 2018.

During his time employed with Schreiter, Mahler was also a member of the Congress of Independent Unions ('CIU"). Pursuant to the CBA, each employee was to work peacefully and cooperatively with every other employee and prohibited from subjecting another employee to verbal abuse or discriminating against him. In the event of a grievance that could not be settled by the employee with his supervisor of employer, then the aggrieved employee was required to present a grievance to the CIU within 15 days of the time the grievance occurred unless the grievance related to discharge, in which case the grievance must be presented to the CIU within 5 days of the date of discharge. Should a grievance arise which cannot be resolved by the CIU and employer, the employee may pursue arbitration.

Ed Neugent was Schreiter's plant manager and was Mahler's direct boss.  If Mahler or any other drivers had any questions or issues, they talked to Mr. Neugent. It was common information and common practice that drivers were to talk to Mr. Neugent if they had any issues. Plaintiff considered Slecka a supervisor and the person in charge when Neugent was not around.

While employed with Schreiter, Mahler was the subject of eight Incident Reports in six months. The Incident Reports ranged from minor to serious vehicular accidents, damage to Schreiter's property, and disciplinary warnings for absenteeism.

On October 16, 2018, Mahler rolled a company truck on a straight, dry road while en route to a customer's job site, causing significant damage. Thereafter, Schreiter terminated Mahler's employment – a decision that was not challenged by the Congress of Independent Unions.

On August 16, 2019, Mahler filed a Charge of Discrimination with the Missouri Human Rights Commission and Equal Employment Opportunity Commission alleging he was subject to racial discrimination, retaliation, and hostile work environment due to his association with African Americans. Mahler's charge was based on his claim that he endured offensive jokes and other offensive behavior from his co-workers and supervisors because the mother of his children is African American and he has an African American girlfriend, which created a hostile work environment.

On December 26, 2019, the EEOC closed its file because it was unable to conclude that the information obtained established a violation of any statutes.

On March 20, 2020, Mahler filed a Petition asserting four counts under Title VII of the Civil Rights Act of 1964, as amended: (i) race discrimination, (ii) retaliation; (iii) hostile work environment – race, and (iv) hostile work environment-retaliation.

On March 19, 2021, Mahler voluntarily dismissed Count I (racial discrimination) and Count II (retaliation), leaving only his hostile work

environment claims.

Mahler alleges he was subject to a hostile work environment due to his association with African Americans. Mahler also alleges he was subject to a hostile work environment in retaliation for complaining about the hostile work environment he was enduring. Mahler's claims for hostile work environment are based on his allegations that other drivers and Slecka made racist and offensive jokes and used the "n" word. Plaintiff testified Slecka made comments directly to him, and that at least twice persons were talking directly to him using the "n" word.  Mahler thinks there may have been one or two conversations he was involved in where the "n" word was used but aside from those one or two occasions which he could not recollect with specificity, Mahler just overheard people using the "n" word. Aside from John Slecka ("Slecka"), Mahler does not remember the names of any co-workers who used offensive language or subjected him to a hostile work environment.

Mahler testified Slecka would state that Mahler liked "dark meat" and would refer to him as "white chocolate," "Vanilla Ice," or "Slim Shady."  Mahler also testified that Slecka was "just joking" and that Mahler was the butt of Slecka's "offensive" jokes.

Slecka was not a supervisor and had no supervisory role over Mahler or any other drivers.  Plaintiff testified that Slecka was an assistant shop manager, and that

Plaintiff considered him in charge of Plaintiff when Neugent was not around.

Slecka did not have authority to hire, terminate, or discipline any employees

of Schreiter.  Neugent was the supervisor of the drivers.

Slecka testified that he referred to Mahler as "Slim Shady" but denies

that  the nickname had any racist or discriminatory intent. Rather, Slecka referred

to Mahler as "Slim Shady" because Mahler liked to rap and reminded him of

Eminem who sang a song called "Slim Shady."  Slecka also testified that he and

Mahler were very friendly, and that Mahler sought Slecka out in the mornings for

conversation. The two even exchanged text messages outside of work.

Slecka testified he knew Mahler had African American girlfriends and that he had

bi-racial children. Slecka further testified it was normal for them to discuss what

was going on in their lives, that Mahler told him about his children being enrolled

in karate and wrestling and that, based on  what  Slecka  perceived  as  a

friendship, he  would  never  do  anything  to  disrespect  Mahler.

Neugent also acknowledged hearing Slecka refer to Mahler as "Slim Shady."

However, Neugent also testified Slecka, and Mahler were friendly, joked often

and that Mahler did not seem offended or complain about being called "Slim

Shady." Neugent also testified that Mahler made jokes at Slecka's expense,

including making fun of the size of his genitalia.

7

Mahler was never physically threatened by any of Schreiter's employees. Mahler was never physically assaulted. Mahler never had any property defaced. Mahler's vehicle was never damaged. Mahler never had any property stolen.

Mahler testified that while he was employed at Schreiter, he was performing his essential job functions. Mahler testified that at all times during his employment, he was able to complete the essential job functions required of his positions.

Prior to his termination, Mahler's job responsibilities never changed. Mahler was never deprived of the opportunity to work if there was work available for him to do. Mahler's pay was never reduced, and he was never demoted.

Mahler understood there was a shop steward who employees were to speak with if they had an issue, and that the shop steward would discuss the issues with the union.

Mahler understood, based on his prior experience in the carpenter's union, that he had a right to file a grievance with the union for the hostile work environment he allegedly endured.

Mahler never complained to his union representative or shop steward about the conditions of his employment. Plaintiff testified that he was nervous to

say anything about the racist comments, because his job could be on the line and he had kids to raise.

Mahler never informed the other drivers who were making offensive comments that he believed their utterances were offensive. Plaintiff testified that he did say how ignorant people were who use that word within the hearing of those using the word.  Mahler never complained to Ed Neugent or Ken Schreiter about the conditions of his employment or that he believed he was being subjected to a hostile work environment.  Mahler has not confided in anyone about the allegations in his lawsuit.  Mahler does not recall contemporaneous discussions with his girlfriend about any of the issues he had at work.  Mahler has not seen a psychiatrist or psychologist for emotional distress or trauma. Mahler considers himself strong mentally and doesn't let himself be affected by stress and anxiety; he believes a lot of that stuff is made up and doesn't believe in those things.

## Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.,* 838 F.2d 268,

273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir.

2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir.  2000).

## Discussion

Defendant moves for summary judgment based on Plaintiff's failure to timely file his hostile work environment claims, *i.e.,* Counts III and IV.  Title VII requires exhaustion of administrative remedies prior to filing suit.  42 U.S.C. § 2000e-5e(1).  A charge of discrimination under Title VII must be filed within 300 days after the unlawful employment practice. *Id.*  Plaintiff filed his charge on August 16, 2019.  Defendant argues 300 days prior to August 16, 2019 was October 20, 2018, therefore, in order for Plaintiff's claim to have been timely, the discriminatory acts must have occurred on or after October 20, 2018.  The sole act which occurred on or after October 20, 2018 was Plaintiff's termination, which Defendant argues cannot provide the basis for Plaintiff's hostile work environment and retaliation based hostile work environment claims raised in the remaining Counts III and IV.

Plaintiff argues that these claims were timely because his employment was terminated on October 24, 2018 and he filed his charge of discrimination within 300 days of that date.

Plaintiff's last day of work was on October 16, 2018.  Although his employment termination was effective October 24, 2018, Plaintiff's last day at the job site was on October 16, 2018.  Thus, Plaintiff could not have experienced any hostile acts at his place of employment beyond the date he was physically at the job.

Plaintiff attempts to embrace the termination date as the end date of his hostile work environment claims, Plaintiff's efforts are misguided. Plaintiff has dismissed Counts I and II, which were the claims in which he alleged adverse employment action through termination.  The termination cannot serve as the basis for Plaintiff's hostile work environment claims because each claim is a separate and discrete violation of Title VII and as such, each claim must be presented to the EEOC prior to filing suit.

Before filing suit, a Title VII claimant must first exhaust his administrative remedies with respect to each allegedly unlawful employment practice by filing an administrative charge and receiving notice of his right to sue. *See* 42 U.S.C. § 2000e-5(b), (e), (f); *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850–51 (8th Cir. 2012) (per curiam).

"[D]iscrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *National Railroad Passenger Co. v. Morgan*, 536 U.S. 101, 113 (2002). Thus, "[e]ach discrete

discriminatory act starts a new clock for filing charges alleging that act." *Id.* "A

discrete act 'occurred' on the day that it 'happened' and constitutes its own

unlawful employment practice." *Mems v. City of St. Paul, Dep't of Fire and Safety

Servs.*, 327 F.3d 771, 785 (8th Cir. 2003) (internal quotation marks omitted) (citing

*Morgan*, 536 U.S. at 109). "Discrete acts such as termination, failure to promote,

denial of transfer, or refusal to hire are easy to identify." *Morgan*, 536 U.S. at 114.

Each incident of discrimination and each retaliatory adverse employment decision

constitutes a separate actionable "unlawful employment practice." *Id. See also

Richter v. Advanced Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012)

(interpreting *Morgan* as "abrogat[ing] the continuing violation doctrine as

previously applied... and [replacing it] with the teaching that each discrete incident

of such treatment constitutes its own 'unlawful employment' practice for which

administrative remedies must be exhausted.") (internal quotation marks omitted).

> Hostile environment claims are different in kind from discrete acts. Their
> very nature involves repeated conduct. See 1 B. Lindemann & P. Grossman,
> Employment Discrimination Law 348–349 (3d ed.1996) (hereinafter
> Lindemann) ("The repeated nature of the harassment or its intensity
> constitutes evidence that management knew or should have known of its
> existence"). The "unlawful employment practice" therefore cannot be said to
> occur on any particular day. It occurs over a series of days or perhaps years
> and, in direct contrast to discrete acts, a single act of harassment may not be
> actionable on its own. See *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21,
> 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) ("As we pointed out in *Meritor*
> [*Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d
> 49 (1986),] 'mere utterance of an ... epithet which engenders offensive
> feelings in a[n] employee,' *ibid.* (internal quotation marks omitted), does not

13

sufficiently affect the conditions of employment to implicate Title VII"). Such claims are based on the cumulative effect of individual acts.

*Morgan*, 536 U.S. at 115.

In order to establish exhaustion with respect to Plaintiff's hostile work environment claims alleged in Counts III and IV, Plaintiff must establish some harassment which occurred within the appropriate time period, *i.e.*, on or after October 20, 2018. Plaintiff fails to satisfy this requirement. Although the date of his employment termination is October 24, 2018, Plaintiff admittedly did not sustain any harassment after October 16, 2018, his last day on the job. Plaintiff did not file a charge of hostile work environment with the EEOC within the time limit, and he is therefore barred from bringing this action for failure to exhaust the required administrative remedies.

## Conclusion

Plaintiff has failed to timely file a charge of discrimination for his claims in Counts III and IV. Defendant is therefore entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary

Judgment, [Doc. No. 23], is **GRANTED**.

     A separate Judgment is entered this date.

     Dated this 8th day of November 2021.

                           _____

                           HENRY EDWARD AUTREY
                         UNITED STATES DISTRICT JUDGE